ENOCH FENDER, *Trustee, &c., et al.,* v. NEOSHO FALLS·
TOWNSHIP, WOODSON COUNTY.

BRIDGE BONDS; *Levy of Taxes in Detached Territory.* Where a township in
any county has voted and issued bonds for the construction of a bridge,
and before the bonds are paid, a portion of the territory of such township is
detached from the township, and out of such detached territory, together
with other territory, a new township is organized, *held,* that it is the duty
of the officers of the old township to levy all the taxes that are to be levied
for the payment of said bonds and interest, whether such taxes are to be
levied on the property of the old township or on the real estate of the
detached territory; and it is not the duty of the officers of the new town-
ship to levy any of said taxes.

*Error from Woodson District Court.*

IN July, 1870, *Neosho Falls Township,* in Woodson county,
issued bonds for the construction of a bridge across the Neosho
river, in said township. April 21, 1871, a part of the terri-
tory of said township was detached, and out of such detached
territory, together with some other territory, the new town-
ship of Everett was organized. Since that time no tax for
the payment of said bonds, or of any part thereof, or of any
interest thereon, has been levied on any of the real estate of
the territory detached from *Neosho Falls Township* as afore-
said. At the October Term, 1878, of the district court, *Neosho
Falls Township* applied for and obtained a peremptory writ of
mandamus requiring the officers of Everett township, plain-
tiffs in error, to levy a tax on such detached territory to pay
interest on such bonds for the years subsequent to the time
of the division. This action is brought to reverse said order.
Other facts are stated in the opinion.

*W. H. Slavens,* and *Cates & Keplinger,* for plaintiffs in error:

The court erred in requiring any levy to be made by the
officers of Everett township. Plaintiffs in error are officers,
not of Neosho Falls township, but of Everett township.
Their official duties relate to their own township. If

20—22 KAS.

outside parties have claims upon certain of the citizens or the property of Everett township, where is the law, rule of comity, or treaty stipulation, which requires plaintiffs to assist in the collection? The law is explicit on this point. The detached territory is to be subject to taxation precisely "as if no change had been made in the boundaries." Neither the officers of Everett nor of Neosho Falls can perform official duties outside of their respective townships. So far as this bonded indebtedness is concerned, the detached territory is as completely a part of Neosho Falls township, and as much within the jurisdiction of its officers, as prior to the division. The tax, if levied at all, must be levied by the officers of Neosho Falls township.

The law of 1873 was not intended to apply to the bonds in question. No class of legislation is looked upon with more disfavor than that which is retrospective. (Sedgw. on Stat. and Const. Law, 160, *et seq.*) And such tendency is rapidly increasing. (*Hoagland v. City of Sacramento*, Cent. Law J., vol. 4, p. 521.) Retrospective statutes are to be strictly construed. (Sedgw. on Stat. and Const. Constr. 163, note.)

Bearing in mind these preliminary principles, let us consider the act of 1873. This law, by its terms, applies only to bonds lawfully authorized and issued by a vote of the people. The bonds in question were neither authorized nor issued lawfully. They were issued largely in excess of the statutory limit, and instead of being used for the negotiation of a loan, they were paid directly for the bridge, and the officers of Neosho Falls township thereby issued them in criminal violation of law. It may be claimed to have been decided that such defects do not render the issue unlawful. No such decision has ever been made. It has been held, possibly, that these defects do not constitute a defense to a suit brought by an innocent holder, but in such suits it is a matter of indifference whether the bonds were issued lawfully or unlawfully, or whether in fact there was any vote of the people. Every single requirement of the law may have

been disregarded, and yet the bonds would be good in the hands of innocent holders. We do not claim that there was no vote at the time these bonds were issued. We merely seek to show that the liability of Neosho Falls township to innocent holders of these bonds, and that the retrospective statutory liability of the detached territory, depend upon entirely different principles, and that, while in the one it is the legality, in the other it is the mere fact of the issue, which is in question.

It may be urged that at the time of this issue the detached territory was a component part of Neosho Falls township, and therefore that it shared in the responsibility for any illegality which may have attended the issue. Well, what of it? Because in a suit, where one is innocent of, and the other responsible for, an illegal issue, the latter is estopped, it by no means follows that a like rule would govern where both parties were alike responsible for the illegality complained of. We do not think the legislature intended to introduce a new rule as to contribution between wrong-doers.

We submit that if the legislature had intended to make the liability of the original township the test of the liability of the detached territory, it would have said so; and we insist that instead of placing the original township in the position of an innocent holder of negotiable paper, the language used clearly negatives any such theory. An express statutory provision would seem necessary, in order to apply the principles governing actions on commercial paper to a proceeding to enforce a statutory liability.

*H. D. Dickson,* and *Ruggles, Scott & Lynn,* for defendant in error:

Whether the claim of plaintiffs in error, that the tax, if levied at all, must be levied by the officers of Neosho Falls township, is correct or not, depends upon the construction to be given to the words in § 3, ch. 142, Laws of 1873, declaring that the detached territory "shall be subject to taxation for the payment of such bonds and the interest thereon in the

same manner as though no such change of boundary lines had been made." One of the cardinal rules of construing a statute is, what was the object to be obtained? (Sedgw. Stat. & Const. Law, 229.) Another is, that the whole statute is to be taken together. (Sedgw. Stat. & Const. Law, 237, *et seq.*) Tested by these rules, it seems to us that these words, as above used, simply mean that the real estate detached shall be compelled to bear its proportionate share of the burden which was incurred while it was attached, or, as the statute itself phrases it, "shall be subject to taxation;" and the words, "in the same manner as though no change had been made," do not mean that the same officers shall make the levy and collect the taxes as though no change had been made. The general idea running through §§ 1, 2 and 3 of this act is, that all the real estate comprising the municipality at the time the debt was incurred, and none other, should bear the burden of such debt. This "was the object to be obtained," and what officers should make the levy and collect the tax is entirely immaterial. Thus, in § 1, we find that, "any bonds heretofore or hereinafter issued, . . . . shall be a lien on *all* the real estate in the county or township;" and in § 2 we find that, "no person or property attached by change of boundary lines to a county or township that has issued bonds, shall be *subject to taxation* for the payment of such bonds." This plainly shows, as we think, that the legislative intent was solely directed to making the real estate of the municipality as it was at the time the debt was made, liable for the same, *i. e.,* "subject to taxation," and had not at all in view the mode or manner of collection, leaving that to be determined by the general rules applicable to all taxes; or, in other words, that the taxes on the real estate detached, which is ordered to be "subject to taxation" for its proportionate share, should be levied and collected in the same way and by the same agencies as other taxes are levied and collected. The language used in § 4 of the act of 1873, which we are considering, seems to be conclusive in favor of the construction we contend for. In that section it is expressly made the duty

of the clerk of a county which has had territory detached, liable to its proportion of a burden, to certify to the clerk of the county to which such territory has been attached the per centum of tax required to be levied, and then the latter county, through its appropriate agencies, proceeds to levy and collect such tax. While a township is not expressly named in this section, we may fairly reason from analogy that the same mode of levying and collecting should be had as though the change was in a county boundary. And we submit that such would have been the mode of levying and collecting the tax in case of a change of county boundaries, even if said § 4 had been entirely omitted from the act of 1873. Again, the language used in § 3 of this act strengthens the argument in favor of the construction we contend for. That section declares that the detached territory "shall be subject to taxation in the same manner," etc., and simply leaves the mode of levying and collecting to the usual and customary agencies.

It is claimed by plaintiffs in error that the act of 1873 was not intended to apply to the bonds in question, because said act applies only to bonds *legally* authorized and issued, and since the bonds in question were not legally issued, the said act does not apply. The alleged illegality consists of two things: First, that there was an over-issue of bonds, *i. e.*, that the amount of bonds issued was greater than ten per cent. (the amount authorized by the statute) of the taxable property of Neosho Falls township at the time the bonds were issued; and, second, that they were issued directly to the bridge builders, instead of a loan being negotiated on them, and the money arising therefrom paid to the bridge-men. This last would seem to be the difference between tweedledum and tweedledee. Besides, this precise question was involved in two cases before our own supreme court. (*Ottawa County v. Nelson*, 19 Kas. 234; *Chandler v. Reynolds*, 19 id. 249.) As to the first, we say that the statute, by the words, "legally issued," simply means that such bonds as are legally binding on the old township, shall be binding on the detached terri-

tory.   Again, if there was an illegality in the issue, the detached territory, through its then agents, participated therein, and it does not now become it to urge this objection to its being held liable after it, in common with all the old township, has received the benefits and is now enjoying them in the shape of the bridge arising therefrom.   By the seventeenth finding of fact, as made by the court below, it appears that the bonds were adjudged and declared a valid and subsisting obligation against Neosho Falls township by the circuit court of the United States for the district of Kansas, in a proper action brought by the holder of the bonds against such township.   Against what were the bonds by this decision declared a valid and subsisting obligation ?   Was it the township of Neosho Falls as it existed *after* the division, or as it was *before* the territory now in Everett township was detached ? We think clearly the latter.

The opinion of the court was delivered by

VALENTINE, J.: This was an action of mandamus, brought by Neosho Falls township, Woodson county, Kansas, against Enoch Fender, trustee, William Jones, clerk, and Charles Howard, treasurer, of Everett township, in said county and state, to compel said officers to levy certain taxes.   The principal facts of the case seem to be as follows: On July 1, 1870, Neosho Falls township voted and issued certain bonds for the construction of a bridge across the Neosho river in said township.   On April 21, 1871, a portion of the territory of Neosho Falls township was detached from the township, and out of such detached territory, together with some other territory, a new township was organized, named Everett township.   Since that time no tax for the payment of said bonds, or of any part thereof or any interest thereon, has been levied on any of the property detached from said Neosho Falls township.   Hence the corporation of Neosho Falls township commenced this action to compel the said officers of Everett township to levy taxes upon the real estate of said detached territory to aid the said Neosho Falls township in

the payment of said bonds and of the interest thereon. The court below granted a peremptory writ of mandamus to compel said officers to levy said taxes.

Whether the court below erred or not in granting this writ, is the only question now presented to this court. Involved in this question, however, are others, the first of which is, whether there is any law authorizing said officers to levy said taxes. If this question shall be decided in the affirmative, then there will be several other questions to decide, but if it shall be decided in the negative, such decision will dispose of the whole case. We think that this question must be decided in the negative. We know of no law giving to the township officers of one township authority to levy taxes for another township; and we know of no law that would give authority to the township officers of Everett township to levy the taxes demanded in the present case. Counsel for the defendant in error (plaintiff below) refer us to § 4 of the act of 1870, relating to township bonds (Laws 1870, p. 77), as giving such authority. That section provides that "the township officers *aforesaid* shall levy each year" bridge-bond taxes such as we are now considering; but "the township officers aforesaid," mentioned in said § 4, are not the township officers of a township different from the one for which the taxes are to be levied, but they are the township officers of the township that voted and issued the bonds; of the township that is liable for the payment of the bonds; of the township that must be sued if the bonds are not paid, and of the township for which the taxes are levied and collected to pay the bonds. No other township officers are mentioned in said section 4, or in the act of which it forms a part, than those of the township which issues the bonds and which is liable for their payment. In the present case, Everett township never had anything to do with the said bonds of Neosho Falls township, and is not liable thereon. A portion of the real estate of Everett township—that portion which was taken from Neosho Falls township—is, along with the real estate still remaining in Neosho Falls township, liable for

the payment of said bonds and of the interest thereon, but Everett township itself is not liable in any manner or degree; hence the levying of said taxes under said section 4 is not an affair in which Everett township, as a corporation, has any interest.

Under § 17 of the act of 1872, relating to "bridge and improvement bonds," the county clerk would levy the taxes. (Laws of 1872, p. 117, § 17.) But that section is now repealed. (Laws of 1874, p. 49, § 16.)

Under § 7 of the act of 1874, amendatory of and supplemental to said act of 1872 (Laws of 1874, p. 45, § 7), the officers of Neosho Falls township should levy the tax. That section provides that "it shall be the duty of the proper officers of any county, city or *township*, in which bonds have been *heretofore* voted, for any of the purposes mentioned in the act to which this act is amendatory [this includes bonds for the construction of bridges], annually, at the time when other taxes are levied, to levy and cause to be collected a sufficient tax to pay the interest on all such bonds as the same shall become due; and also for the purpose of creating a sinking fund for the final redemption of such bonds," etc.

The act of 1873 relating to taxation on the change of boundary lines (Laws of 1873, p. 267), which renders the said detached territory liable in part for the payment of bonds previously voted and issued, would also seem to indicate that the officers of the old township, and not the officers of the township into which the detached territory might be placed, should levy the taxes. The first section of the act makes the bonds a lien upon all the real estate situated in the old township or any township at the time when the bonds are or were voted and issued. And § 3 of the act provides that all the real estate detached from a township and put into some other or a new township, "shall be subject to taxation for the payment of such bonds and the interest thereon, *in the same manner as though no such change of boundary lines had been made.*" Section 4 of the act relates wholly to counties, and provides for certifying the levy made

in one county to another county, and has no application to townships which are situated in *one* and the *same* county.

If the legislature had ever intended that the officers of the township into which the detached territory might be placed, should levy the taxes, why did it not at some time say so? and why did it not provide some mode for giving such officers such information as is necessary to enable them to make the levy intelligently? Under the present laws there is no mode prescribed by law for such officers to know or ascertain what the debts, liabilities, resources, taxable property, or taxes levied, of the old township are. Certainly, under such circumstances, the legislature never intended that the officers of the township into which the detached territory is placed, should levy the taxes. The officers of the old township make the levy at a certain rate per cent. on all the taxable property of their own township, and on all the real estate of the detached territory, and then certify this levy to the county clerk, who calculates the amount of the taxes on all the property subject thereto, and places the same on the tax-roll for collection without any further circuity, and without any unnecessary and superfluous action being taken by the officers of the township containing said detached territory.

The judgment of the court below will be reversed, and cause remanded with the order that said peremptory writ of mandamus be refused.

All the Justices concurring.