THE STATE OF KANSAS, *on the relation of W. H. Robb, County Attorney,* v. THE BOARD OF COMMISSIONERS OF KIOWA COUNTY.

1. KIOWA COUNTY, *Destroyed — Valid Act.* The act which destroyed the existence of Kiowa county and divided its territory between Edwards and Comanche counties, (Laws of 1875, ch. 60,) is not repugnant to §16 of article 2 of the constitution.

2. DETACHED TERRITORY, *Subject to Bond Tax.* The territory detached from Edwards county in 1886, when the county of Kiowa was re-created, is liable, under chapter 142 of the Laws of 1873, and subject to taxation for the payment of the bridge bonds and the court-house and jail bonds which were issued in pursuance of a vote of the electors of Edwards county before that county was divided.

3. ACT — *Provisions Embraced in Title.* The provisions of the last-mentioned act are fairly embraced in its title, and are valid, and they apply where the detached territory is erected into a new county the same as where it is attached to one already organized.

4. LAND, *Subject to Taxation.* The fact that some of the territory may have been government land and not taxable when it was detached, will not relieve it from taxation in accordance with the rule of that act when it is no longer exempt.

5. BOND DEBT, *Attaches, When.* The liability for the debt attaches to the real estate of the county as soon as the bonds are legally authorized and issued, and the fact that the proceeds of the bonds have not been expended when the change of boundary-lines is made, will not exempt the detached territory from bearing its proportionate share of the debt.

*Original Proceeding in Mandamus.*

THE opinion, filed on May 10, 1889, contains a sufficient statement of the facts.

*W. H. Robb*, for plaintiff.

*Rush & Dempcy*, and *Johnson, Martin & Keeler*, for defendants.

The opinion of the court was delivered by

JOHNSTON, J.: This is a proceeding in *mandamus*, originally brought in this court in the name of the state of Kansas, upon the relation of the county attorney of Edwards county, to compel the county commissioners and county clerk of Kiowa county to extend a tax levy upon certain territory in Kiowa county which formerly formed a part of Edwards county, to pay the interest on bonds of Edwards county which were issued before the territory named was detached from Edwards county and made a part of Kiowa county. The alternative writ recites that prior to the taking effect of the act of February 11, 1886, which re-created the county of Kiowa, a portion of which was taken from the county of Edwards, Edwards county had issued $12,000 re-funding bonds, bearing interest at 6 per cent., falling due July 1, 1908; $2,000 bridge bonds, bearing interest at 7 per cent., falling due July 5, 1901; $20,000 court house and jail bonds, bearing interest at 7 per cent., falling due in the year 1905; the interest on all of the bonds being payable annually. It is further stated that these bonds were legally authorized by a vote of the people of Edwards county, were legally issued, and had passed into the hands of purchasers before the passage of the act of 1886. Further, it is alleged that in the year 1887 the board of county commissioners of Edwards county made a levy to meet the interest on the bonds mentioned, as follows: To pay interest on re-funding bonds, three-fourths of a mill; on bridge bonds, one-tenth of a mill; on court-house and jail bonds, one and one-half mills. It is then stated that on or about August 2, 1887, the county clerk of Edwards county, under the direction of the county commissioners of that county, notified the clerk of Kiowa county of the action of the board of county commissioners in making said levy, as provided by law, and requested

that the same levy be made by the county of Kiowa on the territory which was detached from the county of Edwards, but that the commissioners and clerk of Kiowa county refused and neglected to make the levy.

The defendants, in their answer and return to the alternative writ, deny that any portion of the territory of Kiowa county ever formed a part of Edwards county; or that the county commissioners of Edwards county had authorized and issued the re-funding bonds upon a vote of the electors of the county. They allege that the court-house, jail and bridge bonds were not legally issued, for the reason that the elections authorizing their issue were not legally held. They also allege that the board of county commissioners of Edwards county did not lawfully levy the taxes, and the clerk of that county did not lawfully notify the clerk of the county of Kiowa of the action taken with respect to the levy, and did not lawfully request that the levy be made by the county of Kiowa, as alleged in the alternative writ. The defendants finally aver that at the time of the passage of the act of February 11, 1886, the territory alleged to have been detached from the county of Edwards was public lands of the United States, not occupied or settled upon under the preëmption, homestead, or other laws of the United States, and were therefore not subject to taxation.

The case was submitted upon an agreed statement of facts, in which it was admitted that the re-funding bonds mentioned were issued to fund the outstanding debt of Edwards county, and that neither the debt nor the re-funding bonds were ever authorized and issued upon a vote of the electors of Edwards county; and the plaintiffs waive any claim against the territory in Kiowa county upon these bonds; and it is agreed that the allegations in the alternative writ relating to them shall be stricken out. The stipulation further shows that on October 6, 1885, an election was held for the purpose of voting upon the question whether or not Edwards county should issue $20,000 in bonds for the purpose of erecting a court house and jail at the city of Kinsley, in Edwards county, and that a

canvass of the vote was had on October 9, 1885, when it was found that a majority of 31 votes had been cast in favor of the proposition. After the canvass, and before the bonds were issued, some effort was made to enjoin the issuance of the bonds, but no injunction was allowed, and the bonds were thereupon issued.

The court house and jail, for the building of which the bonds were issued, were not erected until after the territory described in the writ was detached from Edwards county. It is admitted that a large proportion of the territory detached from the county of Edwards by the erection of Kiowa county belonged to the government of the United States, and formed a part of the public domain, and was not settled upon at the time of the re-creation of the county of Kiowa. It is further admitted that the county clerk of Edwards county certified to the county clerk of Kiowa county that the board of county commissioners of Edwards county had levied one-tenth of a mill for the payment of interest and sinking fund upon bridge bonds, series No. 2, $2,000, and one and one-half mills for the payment of interest upon court-house and jail bonds, $20,000; that the same was received by the county clerk of Kiowa county prior to the institution of this proceeding, and in time to have made said levy.

Kiowa county was first established and its boundaries defined in 1868. (Gen. Stat., ch. 24, § 37.) By an amendment of this act the boundaries of the county were redefined in 1874. (Laws of 1874, ch. 59, § 2.) In 1875, the territory constituting Kiowa county was divided between and included in Edwards and Comanche counties, and the provisions creating Kiowa county were repealed. (Laws of 1875, ch. 60.) While Edwards county was so enlarged, the bonds mentioned were issued, and subsequently, in 1886, Kiowa county was re-created, and its boundaries restored as they had existed before, including territory detached from Edwards and Comanche counties. (Laws of 1886, ch. 35.)

We will briefly notice the objections raised to the allowance of the peremptory writ. As the re-funding bonds were not

authorized and issued by a vote of the people, they are not a charge against the detached territory, and no levy can be made thereon for their payment. This much is conceded by the plaintiffs; and it is agreed that the alternative writ may be amended and the trial proceed as if no mention had been made of these bonds and no claim had been made upon them; and hence they will be laid out of consideration.

It is conceded that the court-house and jail and bridge bonds were authorized and issued by a vote of the electors before the division of Edwards county; and further, that the bonds had passed into the hands of innocent and *bona fide* holders for value before any question as to the regularity of the election at which they were voted was raised; and they must therefore be regarded as a valid indebtedness existing against Edwards county. (*The State v. Comm'rs of Kiowa Co.*, 39 Kas. 657.)

It is suggested as a defense to the action, that the detached territory sought to be charged never formed a part of Edwards county, and cannot be held liable for any of the debts of that county. This claim is based on the theory that the title of the act of 1875 destroying the existence of Kiowa county and attaching its territory to Edwards and Comanche counties does not specifically mention Kiowa county, and is not sufficiently comprehensive to include any valid provisions relating to that county. The title reads "An act defining the boundaries of Edwards and other counties, and amendatory of chapter 24 of the general statutes of Kansas, approved March third, eighteen hundred and sixty-eight, (as amended by an act approved March sixth, eighteen hundred and seventy-three, and by an act approved March seventh, eighteen hundred and seventy-four,) defining the boundaries of counties." Under decisions already made special mention of, the county of Kiowa in the title was not essential to the validity of the act, and the title is sufficiently broad to include and is fairly expressive of what is found in the act. The point that it is violative

1. Valid act.

of § 16 of article 2 of the constitution must be overruled. (*Weyand v. Stover*, 35 Kas. 545.) The liability of

the detached territory to taxation for the payment of the bonds and the duty of the defendants to extend the levy arise under chapter 142 of the Laws of 1873, an act to regulate taxation where there has been a change of the boundary lines of counties and townships after a bonded debt has been created therein in pursuance of a vote of the people. The constitutionality of this legislation is again attacked, for the reason that it does not provide a uniform rate of assessment and taxation of the real estate within the taxing district. Its validity has been repeatedly before the court, and after a full consideration it has been held not to be repugnant to the constitution. Every point and argument now made has been examined and answered, and further discussion is unnecessary. ( *Comm'rs of Sedgwick Co. v. Bunker,* 16 Kas. 498; *Comm'rs of Ottawa Co. v. Nelson,* 19 id. 234; *Chandler v. Reynolds,* 19 id. 249; *Comm'rs of Marion Co. v. Comm'rs of Harvey Co.,* 26 id. 181; *Craft v. Lofinck,* 34 id. 365.) No serious argument can be urged that the provisions of the act are broader than its title. The title is, "An act to regulate taxation on the change of boundary-lines." Although it is general, it fairly indicates the provisions embraced in the act, and it would be difficult to conceive of one that would be more suggestive, comprehensive, and appropriate. It is said that a person reading the title would have no clue to the subject of apportioning the debt to the different parts of the divided territory. The method by which the liabilities and expenses of municipal corporations are ordinarily met is by taxation, and legislation authorizing and regulating taxation necessarily adjusts the burdens and fixes the proportion which persons and property should bear. Now the act in question simply provides that counties or townships which have by a vote of their electors assumed a bonded debt, and are subsequently divided, shall, under a prescribed rule of taxation, levy upon all the real estate included in such county or township before the division was made. Every scheme of taxation involves apportionment, and we think the provisions of the act under

*2. Detached territory, subject to bond tax.*

*3. Act—provisions embraced in title.*

consideration are germane to its title, and are naturally connected with the subject of regulating taxation on the change of boundary-lines.

It is contended that the act does not apply where the detached territory is erected into a new county or township, but has application only to cases where such territory is attached to an existing organization. There is no such restriction in the title. It is broad enough to include every change of boundary-lines, regardless of whether the detached territory forms a part of an old or a new organization. Then, again, § 3 of the act expressly declares that the territory detached shall be subject to taxation for the debt mentioned, the same as though no change of boundary-lines had been made. The liability of the detached territory is fixed by §§ 1 and 3, neither of which takes into account where the detached real estate may be placed, nor limits the liability to any extent by the disposition that may be made of the same. The only basis for the claim made is in § 4, where it speaks of certifying the per centum of tax to be levied to the county clerk of the county to which said real estate shall have been attached. But this language is not sufficient to overcome the purpose, so clearly evidenced by the other provisions of the act, of making the territory liable wherever it may be placed, and regardless of whether the tax may then be enforced against it or not. Cases might be imagined where temporarily the act might have no application, as where the territory is placed outside of an organization and beyond the reach of the machinery provided for the collection of taxes, so that for the time being the provisions of the act could not be carried out, but the liability would remain as fixed by the legislature, and when the territory was brought within an organization and provided with the necessary local officers and machinery, the collection of the tax might then be enforced. In the present case, the territory taken from Edwards county was attached to that taken from Comanche county, and together formed into an organized county which is supplied with the same facilities for collecting taxes that the other counties possess.

So we think there is little room for the refined theory of the defendants to apply. However, the cases already decided negative their proposition, as the court has sustained the application of the act where the detached territory was erected into a new organization; and we think this view is entirely in keeping with the legislative intent. (*Comm'rs of Sedgwick Co. v. Bunker,* supra; *Comm'rs of Ottawa Co. v. Nelson,* supra; *Fender v. Neosho Falls Tp.,* 22 Kas. 311.) The fact that some

4. Land, subject to taxation. of the detached territory was government land, and therefore exempt at the time of the division, will not affect the application of the rule. For the purpose of paying the debt the detached territory remains a part of the county from which it is taken, and the liability is to be enforced against all the real estate as it existed when the bonds were issued. Of course when a levy is made it applies only to the real estate which is then subject to taxation, and this is true concerning the real estate not detached. Exempt real estate cannot be taxed in either case, but a change from public to private ownership will at any time make it liable to a levy. The fact that it may for some reason have been exempt when a division occurred, will not relieve it from its share of the burden when the exemption is removed. This is conceded to be true as to the territory remaining in the county, and the statute expressly provides that the detached territory shall be subject to tax for this class of indebtedness the same as though no change of boundary-lines had been made. Nor is there any merit in the suggestion that the detached territory should not be held liable for the court-house and jail bonds because the buildings had not been erected when the county was divided. The rule apportioning the debt and fixing the time when the liability shall attach to detached territory belongs exclusively to the legislature, and cannot be modified to suit the notion of equity and justice which the court might enter-

5. Bond debt, attaches, when. tain. It has said that the liability arises against the detached territory when the bonds of the prescribed class have been issued, and not after their proceeds have been expended. What advantage would it have been to

the people of the detached territory if the division had been delayed until the day of the completion of the court house and jail at Kinsley? It is true they will have to contribute for the erection of public buildings in the new county as well as the old; but they voluntarily assisted in creating the obligation in Edwards county, and the amount of the bonds voted and price paid for the same may have been largely influenced by the extent of the territory which under the law was then subject to taxation. Then they are relieved from the payment of any portion of the re-funding bonds and of all other forms of debt incurred by Edwards county, the benefit of which they have enjoyed, except such bonds as have been authorized and issued in pursuance of a vote of the electors. But as we have seen, it is within the power of the legislature to make a rule of apportionment in such cases; and as has been held, the one adopted by it is valid. (See cases heretofore cited.)

In the alternative writ the bridge bonds are designated as series No. 1, while the proof designates them as series No. 2; and upon this another objection is founded. The notice or certificate furnished the defendants by the county clerk of Edwards county, requesting them to extend the levy on the detached territory, described the bonds as series No. 2, and hence there is nothing substantial in the objection. The writ will be treated as amended to correspond with the facts disclosed on the trial.

An examination of all the questions raised, some of which do not require mention, satisfies us that judgment should go in favor of the plaintiff. A peremptory writ of mandamus will therefore issue, commanding the defendants to proceed and make a levy on the territory detached from Edwards county, described in the alternative writ, at the rate mentioned, to pay interest on the bridge bonds, and also on the court-house and jail bonds.

All the Justices concurring.