WESTERN BRIDGE & CONSTRUCTION COMPANY, APPELLANT, v. CHEYENNE COUNTY ET AL., APPELLEES.

FILED FEBRUARY 10, 1912. No. 16,992.

1. Counties: NEW COUNTIES: CONTRACTS: POWER TO ABROGATE. Cheyenne county by taxation created and collected a fund with which to build a bridge across the North Platte river as a part of one of its highways, and to that end entered into a valid written contract with a bridge company. Before the bridge was built the county was divided, and Morrill county was created and organized out of that part of the territory formerly in Cheyenne county in which the bridge was to be constructed. Thereafter Cheyenne county attempted to repudiate the bridge contract. Held, That the county board of Cheyenne county could not abrogate the contract without the consent of Morrill county.

2. ———: ———: CONTRACT FOR BRIDGE: LIABILITY. In such case the bridge company had the right to construct the bridge, and Cheyenne county was liable to pay the contract price therefor out of the fund which had been created for that purpose, and the bridge company was entitled to a judgment against the county for that amount.

3. ———: ———: BRIDGE FUND: APPLICATION OF FUND. It appearing that in the division of property between the counties as provided by section 16, art. I, ch. 18, Comp. St. 1911, Morrill county was entitled to receive one-third of the bridge fund in the treasury of Cheyenne county. Held, That Cheyenne county could apply that fund to part payment and satisfaction of the judgment, and that such payment would satisfy the claim of Morrill county for its part of the bridge fund.

4. Appeal: CONSOLIDATION OF ACTIONS: REVERSIBLE ERROR. Where two actions are consolidated and submitted to the district court to

determine all of the rights, duties and equities of all of the parties to both actions, it is the duty of the court to dispose of all of such matters, and a failure to perform that duty may constitute reversible error.

APPEAL from the district court for Cheyenne county: HANSON M. GRIMES, JUDGE. *Reversed.*

*Wilcox & Halligan, Switzler & Goss* and *Charles O. Whedon,* for appellant.

*Hoagland & Hoagland, J. L. McIntosh, F. E. Williams, Leroy Martin, W. P. Miles, Joseph M. Swenson* and *R. W. Devoe, contra.*

BARNES, J.

APPEAL from a judgment of the district court for Cheyenne county dismissing the action of the appellant, the Western Bridge and Construction Company.

It appears that the commissioners of Cheyenne county, in response to a petition filed for that purpose, determined to construct a bridge across the North Platte river at or near the town of Irving, in that county; that a bridge tax had been levied and collected, and there was available to the county the sum of $11,524.43 for that purpose; that on the 12th day of September, 1908, the board published a notice inviting bids for the construction of the bridge, according to certain plans and specifications, which had theretofore been adopted; that at that time there was on file a petition for an election to divide the county. In due time the election was called, and notice thereof was published and given as provided by law; that on the 10th day of October the board opened the bids, and awarded the contract to build the bridge to the plaintiff, hereinafter called the Bridge Company, as the lowest and best bidder, and to that end entered into a written agreement, by the terms of which the plaintiff was required to give a bond to the county in the sum of $2,000 for the performance of the contract according to its terms; that the Bridge Com-

pany thereafter gave the required bond, which in due time was approved by the county board; that at the election, which was held on the 3d day of the following November, the proposition for county division was adopted, and in due time county officers were elected to take charge of the affairs of the new county. The governor thereupon issued his proclamation, and on the 4th day of January, 1909, the organization of the new county was completed, and part of the territory formerly embraced in Cheyenne county became the new county of Morrill. Thereafter, and on the 11th day of February, 1909, the county board of Cheyenne county caused the clerk of that county to send a letter to the Bridge Company notifying it that the county had repudiated the contract above mentioned, for the reason that after the date of the said contract Cheyenne county was divided and Morrill county was created out of a part of its territory; that the river intended to be bridged was in Morrill county, and indicated its willingness to bear any reasonable expense that the Bridge Company had incurred by reason of the contract.

Cheyenne county thereafter took no further action in the premises, and on the 9th day of March, 1909, the two boards of commissioners made a settlement of all of the property rights, debts, liabilities and obligations of their respective counties, on the basis of one-third to Morrill county and two-thirds to Cheyenne county, with the exception of the matter relating to the bridge contract above mentioned. In that settlement it appears to have been stipulated that, whereas Cheyenne county had entered into a valid contract with the Bridge Company to build the bridge in question, and the county boards were unable to agree as to the respective rights and liabilties of the two counties growing out of said contract, the proposed construction of the said bridge and the division of the bridge fund then in the treasury of Cheyenne county, the matters in difference should be settled by the judgment of the district court for Cheyenne county, and an action was duly brought for that purpose.

It further appears that the Bridge Company built the bridge in all respects in compliance with the terms of its contract, and the bridge thus constructed is wholly within Morrill county; that on the 9th of November, 1909, it filed its claim with the board of county commissioners of Cheyenne county for the sum of $9,359,29, which was the cost of the construction of the bridge according to the terms of the contract. Thereafter the county board wholly rejected the said claim, and thereupon the Bridge Company appealed to the district court for that county; that there were then two cases pending in said court—one between the Bridge Company and the defendant Cheyenne county, and one between Cheyenne county and Morrill county—growing out of and connected with matters relating to the same transaction. It further appears that, in response to a motion made by Cheyenne county, the two cases were consolidated, and the district court was requested to adjudicate the rights of the parties and determine all of the matters in controversy according to the rights, duties and liabilities of the respective litigants. The record discloses that afterwards, and on the 22d day of August, 1910, that court rendered a judgment in favor of Cheyenne county and against the Bridge Company, dismissing its action, and refusing to grant it any relief in the premises, and directed the county of Cheyenne to pay to Morrill county one-third of the bridge fund in the treasury of Cheyenne county at the time Morrill county was organized. From that judgment the Bridge Company and Morrill county have both appealed.

The contention of the Bridge Company is that the district court erred in finding that Cheyenne county had repudiated the contract in question, and in dismissing its action without granting it any relief in the premises whatsoever. It is also contended by Morrill county that the county board of Cheyenne county had no right or power, after the organization of Morrill county, to take any action which in any manner would destroy the rights acquired by that county growing out of the bridge contract

entered into while it was a part of Cheyenne county. We are of opinion that this contention is well founded. When the contract in question was signed, the commissioners of Cheyenne county acted for all of the territory included therein and the inhabitants of that part of such territory as afterwards became Morrill county. They had paid a part of the taxes which had created the bridge fund then in the county treasury of Cheyenne county, with the understanding that they were to have the benefits which would naturally flow from the construction and use of the bridge in question. When the commissioners of Cheyenne county attempted to repudiate the contract, they had no power or jurisdiction to act for Morrill county or any of its inhabitants. Therefore they could take no action which would affect the rights of that county. It seems clear that Morrill county had a beneficial interest in the contract, and it was beyond the power of the commissioners of another county to repudiate or put an end to it without the consent of that county. *Bremer County v. Walstead*, 130 Ia. 164; *State v. Commissioners of Kiowa County* 41 Kan. 630; *Commissioners of Marion County v. Commissioners of Harvey County*, 26 Kan. 181. These authorities, while not precisely in point, sustain the foregoing proposition. It therefore follows that the attempted repudiation by Cheyenne county was wholly ineffectual, and the Bridge Company had the right to carry out the contract and build the bridge according to its terms. This also carried with it the right to maintain an action against Cheyenne county to recover the cost of the bridge out of the fund which had been raised and was in the treasury of Cheyenne county for that purpose. In view of the situation, it would seem that the district court should have rendered a judgment against Cheyenne county and in favor of the Bridge Company for the amount of its claim, less the amount of the freight bills, which by the terms of the contract, and by leave of the state railway commission, the Union Pacific Railroad Company had agreed to receipt in full as a donation to aid the people of that

county in constructing the bridge, which was considered a necessary work of public improvement, and was, in a way, a benefit to the railroad company.

The district court should also have directed and decreed that Cheyenne county was entitled to and should be required to apply one-third of the bridge fund in its treasury at the time of the organization of Morrill county to the satisfaction of so much of the judgment against it, and that such payment should be a complete satisfaction of Morrill county's claim against Cheyenne county on account of the interest it had in said bridge fund.

It is further contended by Morrill county that the district court erred in failing and refusing to determine all of the rights, duties and liabilities between it and Cheyenne county, and render judgment thereon in accordance with justice and equity. We think this contention is well founded. By the terms of the submission of the two causes for adjudication, it was the duty of the court to determine all of the matters in controversy in the manner above indicated.

For the foregoing reasons, the judgment of the district court is reversed, and the cause is remanded for further proceedings in harmony with the views expressed in this opinion.

REVERSED.

HAMER, J., dissenting.

As I understand the case, the new county was cut off from the old county of Cheyenne before any work had been done on the bridge. This condition gave Cheyenne county the power to rescind the contract because it was executory. It was probably the duty of the board of county commissioners of Cheyenne county to rescind the contract. At least that is what the board attempted to do. I think that the board did what was right. I doubt the authority of the county board to build a bridge in another county than that in which the members of the board reside. I do not think that Cheyenne county should be held

liable on the contract for the building of the bridge. Whether the tax levied for the building of the bridge should create a specific fund to be applied in satisfaction and payment of the contract price is another question. There should be no future liability declared aganst Cheyenne county. The Cheyenne county board should not be compelled to build and pay for a bridge in any other county than Cheyenne, and, when the counties were divided and the new county was cut off from Cheyenne, the jurisdiction of the Cheyenne county board ceased.