FOREST COUNTY, Appellant, vs. LANGLADE COUNTY, Respondent.
FOREST COUNTY, Respondent, vs. LANGLADE COUNTY, Appellant.

*April 6 — November 26, 1895.*

*Counties: Division: Apportionment of assets and liabilities.*

1. A new county having been formed chiefly from territory of an old one, and the legislature having provided for the appointment of commissioners to make an adjustment and settlement between them of "all matters of property, debts, credits, assets, and liabilities" of the old county as they existed at the time of the division of its territory, such adjustment should be made upon principles of justice and equity, rather than by technical rules of law.

2. Before the division of the old county, taxes which had been returned as delinquent by the treasurers of towns afterwards included in the new county, and which were claimed to be invalid, had, by a compromise with the tax-payers, been partially remitted by the county board of the old county, instead of being reassessed according to law.   By the payment of subsequent taxes levied to supplement the impaired revenues of the county the delinquent towns had contributed their fair share to the creation of the assets of the old county.   *Held*, that neither the amount remitted nor the expenses subsequently incurred in attempting to collect said delinquent taxes should, in the settlement, be charged to the new county.

3. An apparent indebtedness of the old county to towns embraced in the new county, resulting from a defective system of bookkeeping, and not representing moneys actually received by the county, but including credits given by it to towns for delinquent taxes which were not collected by the county nor charged back to the towns, should not be allowed to the new county in the settlement nor be treated as a liability of the old county.

4. The new county should receive its proper proportion of fees paid to the old county, after the division, for the publication, before the division, of a notice of the time to redeem lands sold for taxes.

5. Tax certificates held by the old county on lands embraced in the new county, and assigned to the new county in the settlement, should be taken by the new county in the condition in which they were at the time of the division; and for any impairment of their value by the sale of junior certificates prior to the division the old county should not be held responsible to the new county, but it should be held accountable for any such impairment caused by the sale of junior certificates after the division, it being then in some sort a trustee for the new county.

APPEALS from a judgment of the circuit court for Langlade county: JOHN GOODLAND, Circuit Judge.· *Reversed on plaintiff's appeal; affirmed on that of the defendant.*

This was originally a proceeding before commissioners appointed under ch. 537, Laws of 1887, "to adjust and settle all matters of property, debts, credits, assets, and liabilities of *Langlade* county," as they were on the 14th day of April, 1885, according to the provisions of sec. 10, ch. 436, Laws of 1885, by which *Forest* county was created from territory detached from *Langlade* and Oconto counties. It was taken by appeal to the circuit court. From the judgment of the circuit court both parties appeal to this court.

There is little dispute about the facts. Nearly all of the facts upon which the judgment is based are agreed. But the agreed facts are not in all respects so clearly stated as to make it clear what the ultimate determination should be.

On *Langlade* county's appeal is presented the question of the correctness of the judgment in disallowing to *Langlade* county items amounting to $12,715.72. These are all of one character. They are all for uncollected delinquent taxes returned by towns now in *Forest* county, before the division, to the county treasurers of *Langlade* county, which were claimed to be uncollectible by reason of infirmities going to the groundwork of the tax, and which were compromised by *Langlade* county with the owners of the land taxed. The whole sum remitted *Langlade* now claims to charge back upon *Forest* county in the settlement, together with the cost

·of advertising the lands for sale. These claims were not allowed.

On *Forest* county's appeal four principal items are controverted: (1) The judgment of the circuit court permitted *Langlade* county to retain the sum of $3,232.45, which appeared by the records of *Langlade* county to be due to the several towns whose territory had been detached to make *Forest* county. (2) It excluded from the present assets of *Langlade* county, which should be divided between the two counties, the sum of $312.30, which *Langlade* county had received, by the redemption of lands sold for taxes, of the fees for advertising the redemption list. (3) In the adjustment the court charged to *Forest* county, at their face value and interest, tax certificates to the amount of $371.81, which, *before the division of the county*, had been rendered nearly or quite worthless by the action of the county treasurers of *Langlade* county in selling junior certificates contrary to law, while the county held older certificates. This loss, it is claimed, should be apportioned. (4) In the adjustment the court charged to *Forest* county, at their face value and interest, tax certificates to the amount of $460.13, which, *after the division*, had been rendered nearly or quite worthless by the action of the county treasurer of *Langlade* county in selling junior certificates contrary to law, while the county held older certificates. This loss, it is claimed, should be borne by *Langlade* county.

It is the correctness of the decision of these several matters which is involved upon these appeals.

*F. J. & C. F. Lamb*, for the plaintiff.

*Thos. W. Hogan* and *Thos. Lynch*, for the defendant.

The following opinion was filed June 20, 1895:

NEWMAN, J. No doubt it was the intention of the legislature that "all matters of property, debts, credits, assets, and liabilities" of *Langlade* county, as they existed at the time

of the division of its territory, should be adjusted between *Langlade* county and the new county formed, in the main, from its territory, upon principles of justice and equity, rather than by any technical rules of strict law. Strict rules of law are difficult of application to such matters, and often produce unfair results. Between *Langlade* county and the towns which were detached to form the new county were no relations of debtor and creditor in any strict sense. Nor is there any such relation, strictly, between the old county and the new one. So, in the adjustment of rights between them, what is just and fair between them is more to be regarded than the application of strict rules of law, which, at best, are of uncertain application to such matters. Towns and counties are to be considered mainly as governmental agencies, rather than as business concerns. And the bookkeeping between them is more in the nature of a history of the collection of the public revenues than of accounts between creditor and debtor.

Whether the amount of uncollected taxes which were compromised by *Langlade* county should be charged, in this adjustment, against *Forest* county, is mainly a question of what is fair and just under all the circumstances, rather than a question of strict law. If in fact the tax proceedings were invalid for some reason "affecting the groundwork of the tax and affecting all the property in any town," then the tax should have been reassessed, under sec. 1210*b*, S. & B. Ann. Stats., and should not have been compromised and reduced. Probably the only course properly open to the county was to have the tax reassessed according to law. The town had no control of that matter. It was in the hands of the county. The right to have such reassessment made was waived by the county by the compromise which it made. The compromise rendered it impossible to be known authoritatively whether the taxes were, indeed, invalid. So it certainly is not clearly established that these

taxes were lost to the county by the default of any officers of the towns. If it could be held that they were lost by the default of officers of the towns, then, probably, these were such losses as might have been charged back upon the towns, under sec. 1157, R. S. But in that case it pertains to the county board, rather than to the towns, to see that the moneys charged back are collected; for "the county board shall add such losses to the next year's taxes of such town." *Ibid.* The county has power to indemnify itself. This remedy, too, the county waived, by not pursuing it. It chose, instead of either course provided by law, to supplement its impaired revenues by the levy of a larger general tax upon the whole county. This, if not strictly legal, may not have been unfair as between the towns themselves, especially since the delinquent towns paid about ninety-five per cent. of all the taxes raised in the whole county. This tax was collected. It went, in part at least, to create the assets or property which *Langlade* county held at the time of the division; so it is not made clear that, as between *Langlade* county and these towns in *Forest* county, the towns have not contributed their fair share to the creation of the assets which *Langlade* county possesses. This claim was never a debt, in a technical sense, against the towns. The county waived its right to enforce its payment in the manner provided by law against the property in the several towns; so that it was in no position to enforce it at the time of the division. The towns have contributed their fair share to the wealth of *Langlade* county. So it does not seem that fairness requires that this sum of money shall be collected of those towns now, especially as the larger part of the territory upon which this burden originally rested is still part of *Langlade* county, and would bear no part of the burden if imposed now. And so of the expense incurred in the attempt which was made to collect those taxes. The territory which is now in *Forest* county paid its fair share of

such expense. So the judgment of the circuit court is affirmed on *Langlade* county's appeal.

Four errors are claimed upon *Forest* county's appeal:

1. It appears by the books of *Langlade* county that at the time of the creation of *Forest* county there was due from *Langlade* county to certain towns, a part of whose territory was detached to form *Forest* county, the sum of $3,232.45. This sum, it is claimed, should be allowed to *Forest* county in the adjustment. The trial court did not allow it. The towns to which this money appeared to be due had been disorganized by the act which created *Forest* county, and no longer existed. A large part, perhaps the larger part, of their territory remained within *Langlade* county. Fairly, a large part of this sum should remain with *Langlade* county, as, in some sense, the representative or trustee of the inhabitants of this territory. At least there appears to be no good reason why it should all belong to *Forest* county, rather than to *Langlade* county. Besides, it does not appear that this sum represents moneys actually received from the territory comprising those towns. It seems to be the result of a system of bookkeeping which has taken no account of certain important items, and does not represent actual money received by *Langlade* county. It does not clearly appear how this balance is derived, nor what it represents. It seems fair to assume that it contains, among the items which go to make it up, credits for the delinquent taxes returned from these towns which were not realized by the county or paid by the property of the towns. These were lost to the county, and not paid by the towns. They were not charged back to the towns, or, at most, only in part. So this balance seems to represent a credit to which the towns were not entitled by reason of anything which they had put into the county treasury. If *Langlade* county cannot now, for the purpose of this adjustment, fairly require *Forest* county to be responsible for those unrealized delinquent taxes, it seems

equally clear that *Forest* county cannot fairly ask *Langlade* county to account to it for moneys which these towns ought to have paid, but never did in fact pay. The sum so apparently due to the towns should be diminished by such sum as the delinquent taxes uncollected and not charged back will amount to. Apparently it will more than extinguish this claim. The result is the same as that reached by the circuit court.

2. It appears that before the time of the trial *Langlade* county had received, through the redemption of lands from tax sales, and held, $312.30 which was derived from fees for the publication of the redemption list. This money, though received afterwards, was assets which existed at the time of the division. At that time it was in the form of tax certificates,— assets to be apportioned. This should be apportioned in the agreed ratio,— three fifths to *Langlade* county, two fifths to *Forest* county.

3, 4. The trial court directed that the tax certificates held by *Langlade* county upon lands which were in *Forest* county should be assigned to *Forest* county. This was done. Certificates to the amount, at their face value, of $2,354.37 were assigned. Many of these were worthless, or nearly so, by reason of the fact that the county, while owning them, had sold junior certificates upon the same tracts of land. This had been done before the division of the county, to the extent that the value of the certificates was impaired at least $371.81, while, after the division, the value of the certificates had, in the same way, been impaired to the extent of $460.13. It is considered that these tax certificates should be taken by *Forest* county in the condition in which they were at the time of the division. Up to that time *Langlade* county was the public instrumentality for gathering the public revenues from that territory, and in that function had some general power to deal with these certificates. For mistake or mismanagement in this function it was not,

responsible to the towns. But when the division of the county was made, the right to own these certificates passed to *Forest* county, and *Langlade* county had no longer a right to sell them. From that time *Langlade* county held the certificates as in some sort a trustee for *Forest* county. For such loss as happened through mismanagement of the trust property it is accountable.

The judgment of the circuit court gave to *Forest* county judgment for the recovery of $943.37, and the tax certificates to the face value of $2,354.73. It should have given, in addition, two fifths of the money realized as fees for the publication of the redemption list, from redemption, equal to $124.92, and the sum of $460.13 for loss in value of certificates by reason of unauthorized sales after the division.

*By the Court.*— The judgment of the circuit court is affirmed on *Langlade* county's appeal, and reversed on the appeal of *Forest* county, and the cause remanded with direction to render judgment according to this opinion.

A motion by *Forest* county for a rehearing on its appeal was granted September 26, 1895, and the cause was reargued on October 14.

The following opinion was filed November 26, 1895:

NEWMAN, J. The trial court found assets belonging to *Langlade* county, amounting to $39,368.84, and that its liabilities amounted to $31,123.57; making an excess of assets over liabilities of $8,245.27. It was agreed that two fifths of this excess should properly belong to *Forest* county. This made the sum of $3,298.10 which should go to *Forest* county. The judgment directed that certain tax certificates, held by *Langlade* county upon lands in *Forest* county, amounting to $2,354.73, should be turned over to *Forest* county, and this amount applied to the payment of the sum due to *Forest* county, with judgment for the balance, $943.37. Now, there

was, in fact, included in this aggregate sum of the liabilities of *Langlade* county the sum of $9,499.33, which appeared on the books of *Langlade* county to be due to certain towns now in either county. The judgment of the trial court did not provide for the payment of any part of this sum to *Forest* county, or to the towns interested. And this court has already held, in effect, that these are not properly liabilities of the county, in any technical sense. A sum which the county cannot be called upon to pay, either legally or equitably, cannot fairly be a liability. So that it is apparent that by deducting this sum from the assets before division, the share of *Forest* county is reduced below its proper measure, by apparently two fifths of this sum. This makes a restatement necessary: Assets, $39,368.84; liabilities, $21,624.24; excess of assets above liabilities, $17,744.60; two fifths of this excess, due to *Forest* county, $7,097.84. Upon this there has been paid by tax certificates which have been assigned to *Forest* county, $2,354.73, which leaves a balance due to *Forest* county of $4,743.11. The court offers no excuse for its oversight of so obvious a matter. The judgment should be that *Forest* county recover $4,743.11, as above shown, with the sums found due by the former opinion, namely, $124.92, its share of the fees for the publication of the redemption list, and $460.13, loss on tax certificates; making in all the sum of $5,328.16.

*By the Court.*— That part of the judgment of the circuit court which is appealed from by *Forest* county is reversed, and the cause is remanded with directions to render judgment in accordance with this opinion.